UNION PAC. R. CO. v. BRERETON.†

(Circuit Court of Appeals, Eighth Circuit. November 5, 1914.)

No. 4065.

1. MASTER AND SERVANT (§ 89*)—INJURIES TO SERVANT—SCOPE OF EMPLOYMENT.

Where plaintiff, a yard foreman at defendant's shop grounds, was employed to do clerical work, but for 32 years had been moving things out of the way to prevent damage to defendant's property when material was being moved, etc., and was injured during the movement of certain engine tires by a failure of those holding the tire to keep it upright until plaintiff had moved a truck from where it was intended to drop the tire, plaintiff was within the scope of his employment in moving the truck, and was therefore entitled to the degree of care applicable to a servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 153–156; Dec. Dig. § 89.*]

2. MASTER AND SERVANT (§ 284*)—INJURIES TO SERVANT—SCOPE OF EMPLOYMENT—QUESTION FOR COURT AND JURY.

Where plaintiff's evidence was all the evidence introduced on the subject of the scope of his authority, and this showed that he was acting within the scope of his authority when injured, the court did not err in omitting to submit such question to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1000–1090, 1092–1132; Dec. Dig. § 284.*]

3. MASTER AND SERVANT (§ 180*)—INJURIES TO SERVANT—RAILROADS—"REPAIR WORK"—FELLOW SERVANT RULE—STATUTES.

Where it was the custom of defendant railroad company to take engine tires to its O. shops, there dress and ship them to other shops, to be placed on engines, and plaintiff, a yard foreman at the O. shops, was injured while handling tires for such purposes, he was engaged in "repair work," within Rev. St. Neb. 1913, § 6053, providing that the fellow-servant rule shall not apply to railroad employés engaged in repair work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 359–361, 363–368; Dec. Dig. § 180.*

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

218 F.—38          † Rehearing denied January 11, 1915.

In Error to the District Court of the United States for the District of Nebraska; Wm. H. Munger, Judge.

Action by George T. Brereton against the Union Pacific Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Alfred G. Ellick, of Omaha, Neb. (Edson Rich and B. W. Scandrett, both of Omaha, Neb., on the brief), for plaintiff in error.

James E. Rait, of Omaha, Neb. (John J. Sullivan, of Omaha, Neb., on the brief), for defendant in error.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. The Union Pacific Railroad Company, hereafter called the defendant, kept at Omaha in its shop grounds a yard at which were kept all sorts of material for repairing and building engines and cars at the shops all over the system. In charge of all this material and its disposition was Otto Nelson, who was called general foreman of the store department. George T. Brereton, hereafter called the plaintiff, was employed under him as yard foreman. There were other subordinate foremen, among them Mr. Chris P. Peterson. In the yard were several platforms, adjacent to railroad tracks, on which were stored castings and the like. On October 17, 1911, the plaintiff was instructed to have two engine tires taken to the store for shipment. These tires weighed from 900 to 1,000 pounds. They had been brought to Omaha and there dressed down to the size required, and were then to be taken to some other shop further west to be put upon engines. The plaintiff testified that the general foreman told him to have two of these tires brought over to the store; that he went out and saw Chris Peterson, and told him what the general foreman wanted, and he said he had to go over to the car shop, and for the plaintiff to go and see Patterson, and tell him to bring his men with him and take the tires over to the store. Patterson and his men went and got a truck, and then went to the platform where the tires were, and where the plaintiff had preceded them. There the plaintiff pointed out the tires desired.

It appears that, these being very heavy, it was the custom to wheel them back from the edge of the platform far enough so that they would fall on the platform and then push them off onto the truck. When the men had rolled one of the tires as far back as they could, in view of the other material on the platform, they decided that there was not room enough to drop it on the platform, and Patterson suggested that if they dropped the tire it would fall on the truck and crush it. The plaintiff said: "Hold it, Pat, until I get it out of the way for you." He then took hold of the truck and commenced to back away from the platform. Down to this point there is no substantial conflict in the testimony. The plaintiff testifies that, without waiting for any notice from him, but when they presumptively thought he had the truck far enough away, they let go of the tire and it struck the edge of the platform, and then went on over, striking the truck,

causing the handle to strike him in the chest and fly up, striking him in the face and knocking him over an embankment and into a cinder pit, several feet below the surface.

[1] The first point made is that the plaintiff was not injured in the line of his duty and that he was injured while beyond the scope of his agency. It is, of course, conceded that, if he voluntarily was doing some work not in the scope of his employment, while so doing he cannot recover, unless a trespasser or licensee could recover. The company did not specially plead this in defense, and offered no evidence as to the scope of the plaintiff's employment, but relied entirely upon his testimony given on cross-examination. The defendant in its brief says:

"He was employed to do clerical work, such as checking, weighing, and keeping track of the material of a part of the storage yards, and was not employed to do manual labor of any kind, nor of the kind he was doing at time of his injury."

The question turns, as stated, wholly upon the plaintiff's own evidence. In his testimony is the following:

"Q. But your duties did not consist of doing any of the physical work with reference to the loading of those tires upon any truck of any kind, as I understand it? A. No. Q. And if you took part in any of the loading, that was a voluntary duty on your part, was it? A. I didn't have to take any part in loading them. I merely showed them the tires and they did the loading. Of course, there were times, if I could assist by moving anything out of the way, why I would do that, or to prevent any damage to the company by anything getting broken, if I should move it out of the way, why I did so. Q. And that day you took part in the loading or unloading of this tire? A. No, sir. Q. Didn't you take hold of this truck for the purpose of pulling it out of the way? A. Yes; but they held the tire."

He had been working for the company 32 years in the same capacity. If during all these years he had been moving things out of the way, and preventing damage to the company by anything getting broken, then that must be regarded as voluntarily accepted and acquiesced in by the company, as within the scope of his agency. There was no one present to move the truck, except the plaintiff. All the other employés were engaged in handling the tire. It is not to be presumed that, if a block or other obstacle had to be moved, it was the plaintiff's duty not to move it, but to leave four employés holding the tire and go in search of some one to move the obstacle. But it was not the fact that he was moving the truck that caused his injury. He was properly present at the scene in pursuance of his manifest duties, and if some one else had stood at one side of the handle drawing it back, and the plaintiff had stood there in discharge of his admitted duties, he would have been hurt in the same way he was.

We have examined all the cases cited upon the subject, and a multitude of others, but none of them seem to have involved facts like these. In many of the cases where the rule has been applied, the employé has voluntarily gone from an occupation where he was employed to some other duty, and was injured by reason of the fact.

[2] The defendant, after contending that this point was raised by its motion at the close of all the evidence that the jury be directed

to return a verdict for the defendant, then insists that, if this motion should not have been sustained upon that ground, the following instruction should have been given to the jury:

"You are instructed that, if you find that it was no part of Brereton's duties to help move the truck in the manner in which he was moving same at the time of his injury, then your verdict must be for the defendant, Union Pacific Railroad Company."

The defendant in argument says:

"While it is not evident how it could be considered that the evidence was contradictory upon the question of the plaintiff's duties, yet, if it could be so considered, the court should have submitted it to the jury."

As before stated, there is no evidence at all upon this subject, except by the plaintiff, and no such conflict is found in it as to have required the submission of this instruction to the jury.

[3] It is next insisted that the plaintiff was injured through the negligence of fellow servants. It is not claimed that he was engaged in interstate commerce, and his right of recovery was therefore governed by the Nebraska laws. Section 6053 of the Revised Statutes of Nebraska provides that:

"Every railway company operating a railway engine, car or train in the state of Nebraska shall be held to any of its employés, who at the time of injury are engaged in construction or repair work or in the use and operation of any engine, car or train for such company, or, in the case of his death, to his personal representatives, for the benefit of his widow and children, if any, if none, then to his parents, if none, then to his next of kin dependent upon him, for all damages which may result from negligence of any of its officers, agents, or employés, or by reason of any defects or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, ways or works."

This statute substantially abolishes the rule of fellow servants, if the plaintiff was at the time of the injury engaged in construction or repair work. It may be assumed that engines, when newly equipped, have the tires on the wheels; but if it was the practice of the company to take tires to the Omaha shops, and there dress them down and ship them out to other shops, to be put upon engines, any one engaged in handling tires for such purposes was engaged in repair work. Swoboda v. Union Pacific R. Co., 87 Neb. 207, 127 N. W. 215, 138 Am. St. Rep. 483; Metz v. C., B. & Q. Ry. Co., 88 Neb. 459, 129 N. W. 994.

It follows that the doctrine as to fellow servants does not apply, and the judgment of the District Court must be and is affirmed.